**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
**JESSICA S. ALLEN**
UNITED STATES MAGISTRATE JUDGE

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973) 645-2580

February 23, 2026

**LETTER ORDER**

**TO:**    *Pro Se Plaintiff via ECF*

**Re:**    **Karcz v. El Mezouak, et al.**
    **Civil Action No. 26-1470 (MEF) (JSA)**

Dear Plaintiff:

Before the Court is your *ex-parte* "emergency letter motion for authorization of alternative service and expedited discovery." (ECF No. 8). For the reasons set forth below, the request for alternative service is **granted**, and the request for expedited discovery is **denied without prejudice**.

**I.    Background**

This case involves alleged ownership of an online media brand described as "Vines," which Plaintiff allegedly established in 2013. (Compl., ¶¶ 1, 5, 7). Vines now allegedly exists as Facebook Page 171112259610923, and is hosted by non-party platform host Meta Platforms, Inc. (*Id.*, ¶ 7; *see also* ECF No. 3).

On February 13, 2026, Plaintiff filed the Complaint and an application for a temporary restraining order. (ECF No. 1).[1] Plaintiff is allegedly a citizen of New Jersey. (*Id.*, ¶ 5). Defendants are Imad El Mezouak, Naima El Khayati, Najia El Mezouak, and Samir Ayach (at times, collectively, "Defendants"), all of whom are alleged to be citizens of Morocco. (*Id.*, ¶¶ 1, 6).[2] According to the Complaint, Defendants have engaged in a decade long illicit game of tug-of-war seeking to gain control of Vines through coordinated cyber-attacks. (*Id.*, ¶¶ 7-8, 13-15). At present, Plaintiff claims that Vines has been illegally transferred out of his control and into a "hostile entity" controlled by Defendants. (*Id.*, ¶ 17). The Complaint contains four counts: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) conversion; (3) trespass to chattels; and (4) "Specific Recovery of Digital Property (mandatory injunction)." (*Id.*, ¶¶ 19-29).

---

[1] Plaintiff's February 13th filing also contained a declaration in "support of alternative service . . . ." (*See* Declaration of Michael Karcz ("Karcz Decl."), ECF No. 1-1). Although not re-filed as part of Plaintiff's emergency letter motion at ECF No. 8, the Court, in its discretion, has considered the declaration in connection with the motion.

[2] The Complaint also names John Doe Defendants 1-10.

On February 13, 2026, the Honorable Michael E. Farbiarz, U.S.D.J. entered an *ex-parte* temporary restraining order, which, among other things, restrained Defendants and all those acting in concert with them from: "(a) posting, publishing, or modifying any content on Facebook Page ID 171112259610923 ("Vines"); (b) deleting, selling, transferring, merging, or unpublishing Vines, or modifying the administrative status of Vines; and (c) altering the financial payout settings or withdrawing funds associated with Vines." (ECF No. 3, at times, "the TRO").  Judge Farbiarz further ordered Meta Platforms, Inc., as the custodian of Vines, to, among other things, freeze and disable Vines' administrative functions and "hold and suspend the release of any accrued or pending monetization payouts, ad revenue, or creator bonuses associated with Vines." (*Id.* at 2). Judge Farbiarz directed Plaintiff to serve a copy of the TRO on the appropriate parties by 5:00 pm on February 16, 2026, and that the TRO shall "expire and become void without need of further action on February 20 at 9:00am." (*Id.*)  Finally, Judge Farbiarz ordered:

> Should the Plaintiff seek a further extension to the Temporary Restraining Order, the Plaintiff shall (i) prove that he has properly served the Defendants, (ii) explain further the basis of this Court's subject matter jurisdiction, and (iii) explain why there is a continuing need for a restraint, beyond February 20. Should the Plaintiff seek expedited discovery or authorization of alternative service on the Defendants, the Plaintiff shall direct those requests to the United States Magistrate Judge.

(*Id.*)

On February 19, 2026, Judge Farbiarz entered a Text Order, stating in part:

> The Court noted at ECF 3 that requests for, among other things, alternative service should be directed to the United States Magistriate Judge. The Plaintiff has not done that. Solely for the purpose of leaving sufficient time for the Plaintiff to make an appropriate application to the United States Magistrate Judge and for a ruling, the ECF 3 Temporary Restraining Order will be extended until February 23 at 5:00pm. The ECF 3 Temporary Restraining Order and the one to be entered shortly are simply administrative stays. Their purposes are solely to freeze the status quo to eventually allow for appropriate merits consideration (and to allow for service of process).

(ECF No. 6).

Shortly thereafter, in accordance with the Text Order, Judge Farbiarz entered a second TRO, extending the restraints imposed until February 23, 2026, at 5:00 p.m. (ECF No. 7). Plaintiff's current motion followed.  (*See* ECF No. 8).

## II.    Alternative Service

Preliminarily, the Court notes that Plaintiff does not address the standard governing applications for alternative service in his motion papers.  Nonetheless, given Plaintiff's *pro se* status, the Court considers the merits of Plaintiff's motion.

Defendants are purportedly citizens of Morocco.  Federal Rule of Civil Procedure 4(f) governs service on individuals outside of the judicial districts of the United States.  Rule 4(f) provides for service in three ways: (1) "by any internationally agreed means of service that is reasonably calculated to give notice . . .  such as those authorized by the Hague Convention [November 15, 1965, arts. 2–5, 20 U.S.T. 361] . . ." (2) "if there is no internationally agreed means . . . by a method that is reasonably calculated to provide notice," or (3) "by other [court-ordered] means not prohibited by international agreement."  Fed. R. Civ. P. 4(f)(1)–(3).

Plaintiff relies on alternative service pursuant to Rule 4(f)(3).  (*See* ECF No. 8 at 1).[3]  When a party seeks authorization for alternative service pursuant to Rule 4(f)(3), courts in this District require the movant to establish the following three factors: "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiffs] have made a good faith effort to locate and serve defendants by traditional means." *DUSA Pharms*, 2024 WL 4151169, at \*4 (at times, the "Rule 4(f)(3) factors"); *see also, e.g.*, *Quantificare v. Canfield Scientific, Inc.*, 2021 WL 8443796, at \*2 (D.N.J. Jan. 12, 2021); *Vanderhoef v. China Auto Logistics, Inc.,* 2019 WL 6337908, at \*2 (D.N.J. Nov. 26, 2019); *SEC v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC*, 2018 WL 4676043, at \*7 (D.N.J. Sept. 27, 2018); *Bravetti v. Liu*, 2013 WL 6501740, at \*3-4 (D.N.J. Dec. 11, 2013).  Importantly, "[d]istrict courts maintain the discretionary authority to determine whether the particularities and necessities of a case warrant alternative service." *Quantificare,* 2021 WL 8443796, at \*2 (citation omitted).

Plaintiff proposes service of the Summons, Complaint, TRO and all supporting papers on Defendants by: (1) email to contact@wofeed.com, which is allegedly an email address that Defendants added to Vines's website as their "primary business contact," and (2) Facebook Messenger to the personal profiles of the named Defendants, all of whom which Plaintiff alleges maintain "active personal Facebook profiles."  (ECF No. 8 at 2, at times, "the proposed methods of service").[4]  Plaintiff contends that the "combination of these two methods—a verified

---

[3] Morocco is a signatory to the Hague Convention.  *See, e.g.*, *Chanel, Inc. v. Individuals, Partnerships, & Unincorporated Assoc. appearing on Schedule A*, 2021 WL 1053278, at \*1 (S.D. Fla. Feb. 9, 2021) (citations omitted). There is apparently some disagreement in this District as to whether a party must attempt service through the Hague Convention on a foreign defendant when that defendant's country is a signatory to the Convention.  *Compare DUSA Pharms., Inc. v. Biofrontera*, 2024 WL 4151169, at \*4 (D.N.J. Sept. 11, 2024) (service under Hague not required), *with SEC v. Dubovoy*, 2016 U.S. Dist. LEXIS 171793, at \*6 (D.N.J. Dec. 13, 2016) (service under Hague required). However, under either approach, it is well-established that "[w]hen a defendant's address is unknown, . . . the Hague Convention shall not apply." *Braverman Kaskey, P.C. v. Toidze*, 599 Fed Appx. 448, 452 (3d Cir. 2015) (citation omitted).  Here, Plaintiff has submitted a declaration that details significant, but unsuccessful, efforts to locate physical addresses for Defendants in Morocco.  (*See* Karcz Decl., ¶¶ 1-9.).  Thus, service through the Hague Convention is not required in this case under either approach. *See Braverman*, 599 Fed. Appx. at 452.

[4] Although not yet authorized by the Court, Plaintiff represents that he already served the TRO, but not the Summons and Complaint, on Defendants through these methods on February 17, 2026, when he "discovered the TRO on

commercial email actively held out to millions of followers as the primary business contact," and personal messages to Defendants' individual Facebook accounts on the same platform, "provides a multi-channel notice strategy that is overwhelmingly likely to result in actual notice." (*Id.* at 2-3). Plaintiff continues that either "channel alone would likely satisfy Due Process; together, they ensure redundancy." (*Id.*)

Based on the record presented, the Court concludes that Plaintiff has satisfied the Rule 4(f)(3) factors.

First, there is no international agreement that prohibits Plaintiff's proposed methods of service. Article 10 of the Hague Convention permits service of process through alternative means provided that the destination state does not object to those means. *See Garung v. Malhorta*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). Notably, "Morocco has not filed a Declaration or other reservation regarding the Hague Service Convention." *Montblac-Simplo Gmbh v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A,* 2025 WL 1439411, at *1 n.1 (S.D. Fla. Jan. 6, 2025); *see also Richemont Int'l SA v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, 2020 WL 6484125, at *1 n.3 (S.D. Fla. July 13, 2020) ("Additionally, Morocco do[es] not object to the alternative means of service . . . including e-mail or website posting."). Accordingly, numerous courts have held that service by email and internet communication on defendants in Morocco are not prohibited by international agreement. *See, e.g., Montblac-Simplo,* 2025 WL 1439411, at *2 (approving email service on defendants located in, among other locations, Morocco); *Chanel*, 2021 WL 1053278, at *1 (service by email and internet communication permissible on defendants in, among other locations, Morocco); *Louis Vuitton Malletier v. Individuals, Partnerships, & Unincorporated Assoc. appearing on Schedule A*, 2020 WL 4501765, at *1-2 (S.D. Fla. June 9, 2020) (defendants located in, among other locations, Morocco, holding, "[s]ervice via e-mail and via posting on a designated website are not prohibited under international agreement in this case."); *Aidas AG v. Individuals, Partnerships, & Unincorporated Assoc. appearing on Schedule A*, 2019 WL 7841807, at *1-2 (S.D. Fla. May 23, 2019) (defendant located in Morocco; holding, "[t]he Court concludes that the Hague Service Convention does not prohibit service on defendants by means of e-mail service or Internet posting.").

Although this Court has not uncovered any authority addressing the propriety of serving a defendant in Morocco through Facebook Messenger, a review of the judicial landscape confirms that courts generally have not hesitated to approve service by Facebook Messenger pursuant to Rule 4(f)(3). *See Noco Co. v. Shenzhen Valuelink E-Commerce Co.*, 2020 WL 11625817, at *2 (N.D. Ohio July 2, 2020) (service by Facebook Messenger permitted on defendant in China); *Juicero Inc. v. Itaste Co.*, 2017 WL 3996196, at *3 (N.D. Cal. June 5, 2017) (relating to Defendant in China, "[s]ervice through [d]efendants' Facebook account is also permissible."); *Shinde v. Nithyananda Found.*, 2014 WL 12597121, at *7 (C.D. Cal. Aug. 25, 2014) ("Courts have therefore found that the Hague Convention does not bar service via platforms like Facebook Messenger and LinkedIn."); *Whos Here Inc. v. Orun*, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (service permitted by Facebook).

---

PACER." (ECF No. 8 at 3). In so doing, Plaintiff could not serve Defendant Najia El Mezouak through Faceboook Messenger because he received a platform notification stating, "you can't message this account." (*Id.*) Thus, Plaintiff claimed that he served Defendant Najia El via email at contact@wofeed.com.

Accordingly, the Court is satisfied that Plaintiff's proposed methods of service are not prohibited by international agreement.  Thus, the first Rule 4(f)(3) factor is satisfied.

Second, Plaintiff's proposed method of service is reasonably calculated to provide Defendants notice.  Due Process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiff's proposed methods of service are by email to an address that Plaintiff alleges Defendants placed on Vines, and to the individual Defendants' Facebook accounts.  In general, courts find that service by email comports with due process "where the movant has supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." *Menon v. Corbett*, 2023 WL 3945972, at *3 (D.N.J. Aug. 3, 2023); *Commodity Futures Trading Comm'n v. Tradewale, LLC*, 2022 WL 20668009, at *3 (D.N.J. Jan. 12, 2022) (same).  Here, Plaintiff has submitted a sworn declaration explaining that Defendants are responsible for placing the email contact@wofeed.com on Vines, and thus, have represented to millions of followers that they can be reached at that address.  (*See* Karcz Decl., ¶¶ 10(b), 14).  Plaintiff also contends that Defendants are active on Facebook and that personal messages to Defendants' individual Facebook accounts are additional assurance that Defendants will receive notice of these proceedings.  (Karcz Decl., ¶ 15).  Based on the sworn declaration and supporting evidence submitted, the Court agrees that Plaintiff's proposed methods of service are reasonably calculated, under the circumstances, to apprise Defendants of the proceedings.  *See, e.g.*, *Chanel,* 2021 WL 1053278, at *2 (alternative service on defendants in, among other places, Morocco, appropriate when movant demonstrated, "defendants conducted their businesses over the Internet," "defendants used e-mail regularly in their businesses," and "the plaintiff shows e-mail is likely to reach defendants." (citing *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017-18 (9th Cir. 2002)).  Accordingly, the second Rule 4(f)(3) factor weighs in favor of alternative service.

Finally, Plaintiff has satisfied the third Rule 4(f)(3) factor—that is, he has made a good faith effort to locate and serve Defendants by traditional means.  According to Plaintiff, he has expended significant effort to locate physical addresses for Defendants in Morocco, including searching the Moroccan Office of Industrial and Commercial Property online database; conducing online domain lookups associated with Defendants' website activity; and reviewing "administrative activity logs" for IP addresses containing specific street addresses.  (*See* Karcz Decl., ¶ 2).  The Court finds that Plaintiff's good faith but unsuccessful efforts to locate physical addresses for Defendants satisfies the third Rule 4(f)(3) factor.

Based on the above, the Court **grants** Plaintiff's motion to serve the Summons, Complaint, TRO, all supporting documents, and this Letter Order on Defendants by email to "contact@wofeed.com" and by transmission via Facebook Messenger to the personal profiles of each named Defendant.[5]

---

[5] Plaintiff states that "where a Defendant's Messenger account is inaccessible as restricted or blocked, service via email is sufficient as to that Defendant."  (ECF No. 8 at 3).  The Court agrees.

## III.    Expedited Discovery

Plaintiff also requests expedited discovery in the form of an order directing the Clerk to issue blank Rule 45 subpoenas for service on three non-parties, Meta Platforms, Inc.; Google, LLC; and NameCheap, LLC (the "non-parties") and to require the non-parties to provide Basic Subscriber Information within ten (10) days.  According to Plaintiff, expedited discovery is needed to "effectuate traditional service or trace diverted funds."  (ECF No. 8 at 3).

Rule 26(d)(1) generally prohibits parties from seeking discovery "from any source before the parties have conferred as required by Rule 26(f)."  Fed. R. Civ. P. 26(d)(1). Notwithstanding, district courts possess broad discretion in managing the discovery process and may expedite or otherwise alter its timing or sequence.  *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("matters of docket control and conduct of discovery are committed to the sound discretion of the district court").  Courts in this District generally require a showing of "good cause" before permitting expedited discovery.  *See Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98*, 98 F. Supp. 3d 693 (D.N.J. 2015) ("[a] good cause standard governs whether to permit discovery prior to a Rule 26(f) conference").

Here, Plaintiff has not sufficiently addressed the applicable legal standard, explained why expedited discovery of the nature sought is necessary at this time, or explained any prejudice that would result if the discovery is not permitted.  Further, to the extent Plaintiff represents that the expedited discovery is being sought to locate Defendants' physical addresses and personally serve the Summons and Complaint, (*see* ECF No. 8 at 3), the request is moot.  Equally important, Judge Farbiarz has required Plaintiff to provide additional information regarding subject matter jurisdiction, (*see* ECF No. 3), which is a threshold issue.  Finally, the Summons and Complaint have not yet been served.  Absent further information and while the threshold jurisdictional question remains, this Court finds that Plaintiff has not established sufficient good cause to pursue expedited discovery.

## IV.    Conclusion

Based on the above, Plaintiff's emergency request for alternative service is **granted**, and his request for expedited discovery is **denied without prejudice**.  Plaintiff is directed to effect service by providing the Summons, Complaint, TRO, all supporting documents, and a copy of this Letter Order on each individual Defendant on or before the expiration of the TRO.  Plaintiff is directed to timely file proof of service on the Court's docket.

The Clerk of the Court is requested to terminate ECF No. 8.

**SO ORDERED**.

s/Jessica S. Allen
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

cc:  Hon. Michael E. Farbiarz, U.S.D.J.

6