UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL KARCZ,

Plaintiff,

v.

IMAD EL MEZOUAK et al.,

Defendants.

No. 26-cv-1470 (MEF)(JSA)

OPINION

\*    \*    \*

For the purposes of this brief Opinion, the Court largely assumes familiarity with the procedural history and facts of this case.

\*    \*    \*

Some background based on the uncontested evidence.

A man[1] created a Facebook page.  See Complaint for Injunctive Relief, Damages, and Declaratory Judgment ("Complaint") (ECF 1) ¶ 7.

In January 2026, certain people[2] "launched a coordinated attack" and took over the page by "exploiting Meta's support protocols." Id. ¶ 13.

The man tried to take back control of the page.  See id. ¶ 15. But that ultimately did not work.  See id. ¶ 17.

\*    \*    \*

---

[1]  Michael Karcz.

[2]  Imad El Mezouak, Naima El Khayati, Najia El Mezouak, and Samir Ayach.

In light of the above, the man (from here, "the Plaintiff") sued the people who took over the Facebook page (collectively, "the Defendants").[3]

The Plaintiff's papers included an application for a temporary restraining order.  See Memorandum of Law in Support of Ex Parte Temporary Restraining Order ("Plaintiff's Brief") (ECF 1-2) at 1.

Around 60 minutes after the TRO application was filed, the Court entered an administrative stay.  See Temporary Restraining Order (ECF 3); see also Feb. 19, 2026 Text Order (ECF 6).

The stay aimed to buy a small bit of time, so that the Defendants could weigh in and the Court could evaluate things after hearing from both sides.  See generally Zheng v. Bondi, 2025 WL 2808542, at *1 (D.N.J. Sept. 26, 2025).

But it was not clear that the Defendants had been properly served.  See Certification of Service (ECF 4) at ¶¶ 3-9.  And serving them, it seemed, might be difficult --- the Defendants are said to be located outside of the United States.  See Complaint ¶ 6.

The Plaintiff then filed a motion for "alternative" service. See Emergency Letter Motion for Authorization of Alternative Service and Expedited Discovery (ECF 8) at 1.

That motion was granted in relevant part by the United States Magistrate Judge, see Feb. 23, 2026 Letter Order (ECF 10) at 6, and the Plaintiff filed proof of service, indicating that he had served the Defendants in the "alternative" manner approved by the Magistrate Judge.  See Certification of Service (ECF 11) ¶ 1.

Along the way, the Court (i) converted the Plaintiff's TRO application into a preliminary injunction application, see Mar. 4, 2026 Text Order (ECF 17); and (ii) set a response deadline for the Defendants.  See Feb. 24, 2026 Order (ECF 14).

The deadline came and went.  No response.  And the Defendants have not appeared.

---

[3]  The Plaintiff has no lawyer.  He is pro se.

Against this backdrop, take up now the Plaintiff's unopposed[4] application for a preliminary injunction.

\*      \*      \*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Move through these four factors now.

\*      \*      \*

Has the Plaintiff established that he is likely to succeed on the merits?  The Court's conclusion: yes.

The Plaintiff alleges that the Defendants violated the federal Computer Fraud and Abuse Act[5] by taking over his Facebook page. See Complaint ¶¶ 19-21.

"To state a civil claim for a violation of the [Act], a plaintiff must allege: 1) . . . loss; 2) caused by; 3) a violation of one of the substantive provisions set forth in § 1030(a); and 4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)."  Sealord Holdings, Inc. v. Radler, 2012 WL 707075, at \*4 (E.D. Pa. Mar. 6, 2012); accord Cassetica Software, Inc. v. Comput. Scis. Corp., 2009 WL 1703015, at \*3 (N.D. Ill. June 18, 2009); Mobile Mark, Inc. v. Pakosz, 2011 WL 3898032, at \*2 (N.D. Ill. Sept. 6, 2011); Christie v. Nat'l Inst. for Newman Stud., 2019 WL 1916204, at \*4 & n.5 (D.N.J. Apr. 30, 2019)

The Plaintiff is likely to succeed on the argument that each of these four boxes has been checked.

To see why, walk through them one at a time.

\*      \*      \*

Start with the first of the four Computer Fraud and Abuse Act elements, loss.

---

[4]   For now, at least.

[5]   18 U.S.C. § 1030 et seq.

3

Under the Act, "loss" includes "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense."  18 U.S.C. § 1030(e)(11).

The Plaintiff, "a professional Network Security Specialist," has put forth uncontested evidence that he spent 25 hours investigating the Facebook page takeover.  Complaint ¶ 21(a).[6] And the Plaintiff swears that "restor[ing] the system to its pre-breach operational state" will require paid advertising campaigns.  Id. ¶ 21(b).[7]

This shows that the Plaintiff is likely to establish that he suffered a "loss" here.  See In re DoubleClick Inc. Priv. Litig., 154 F. Supp. 2d 497, 524 (S.D.N.Y. 2001) (holding that "any economic losses [the] plaintiffs bore in securing or remedying their systems in the wake of . . . alleged [Act] violations" would "count towards" satisfying the "loss" requirement); Univ. Sports Publ'ns Co. v. Playmakers Media Co., 725 F. Supp. 2d 378, 387 (S.D.N.Y. 2010) (noting that "the costs of investigating security breaches constitute recoverable 'losses'" under the Act) (citations omitted); Maximum Indep. Brokerage, LLC v. Smith, 218 F. Supp. 3d 630, 636–37 (N.D. Ill. 2016) (concluding that the costs associated with "[a]ssessing and repairing damage to computer[] files" were "'compensable'" losses under the Act); St. Johns Vein Ctr., Inc. v. StreamlineMD LLC, 347 F. Supp. 3d 1047, 1061 (M.D. Fla. 2018) (determining that allegations of, among other things, "lost time and effort needed to take subsequent remedial measures" and "expenses [associated with] responding to the [d]efendants' unauthorized access and use" were sufficient to allege "loss" under the Act) (cleaned up); NovelPoster v. Javitch Canfield Grp., 140 F. Supp. 3d 954, 962–63 (N.D. Cal. 2014) (holding that the costs associated with restoring a website to its pre-takeover

---

[6]  The evidence cited in this Opinion is from the Plaintiff's complaint and the attachments to it.  The Plaintiff "certif[ied] under penalty of perjury" that the contents of the complaint are "true and correct."  See Complaint at 16.  So it can be relied on here.  See Parkell v. Danberg, 833 F.3d 313, 320 n.2 (3d Cir. 2016) (treating statements "in verified complaints and other court filings" that are "signed under penalty of perjury . . . as equivalent to statements in an affidavit").

[7]  This, too, is not contested.

condition and "conducting a damage assessment" --- these "fit within the [Act's] definition of 'loss'").

*    *    *

Move now to the third of the four Computer Fraud and Abuse Act elements[8] --- whether the Plaintiff can likely establish "a violation of one of the substantive provisions set forth in § 1030(a)."  Sealord Holdings, Inc., 2012 WL 707075, at *4.

Among other things, the referenced section of the Act, Section 1030(a)(5)(C), prohibits "intentionally access[ing] a protected computer without authorization, and as a result of such conduct caus[ing] damage and loss."  18 U.S.C. § 1030(a)(5)(C).

Break Section 1030(a)(5)(C) down into its parts.  And then take the analysis in the following order.  "[P]rotected computer." Then "access[] . . . without authorization."  Then "[i]ntentional[]" conduct.  And finally "damage and loss."

    Protected computer

The Facebook page at issue here is located on Meta's servers. See Complaint ¶ 20.  Those are "protected computer[s]."  See Meta Platforms, Inc. v. Nguyen, 2023 WL 8686924, at *8 (N.D. Cal. Nov. 21, 2023) (so holding), report and recommendation adopted, 2024 WL 6047147 (N.D. Cal. Feb. 23, 2024); Facebook, Inc. v. Sluchevsky, 2020 WL 5823277, at *6 (N.D. Cal. Aug. 28, 2020) (similar), report and recommendation adopted, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020); see also Just Be Inc. v. Brisendine, 2019 WL 2274990, at *2 n.2 (D. Or. May 3, 2019) ("Instagram's servers . . . are protected computers under the

_____

[8]  The second element, causation, is plainly established here on a likelihood-of-success basis.  The Plaintiff must show that "the losses [he] claim[s] were the reasonably foreseeable result of the alleged [Act] violations, and that any costs" he has or will incur are "reasonably necessary."  Glob. Pol'y Partners, LLC v. Yessin, 686 F. Supp. 2d 642, 647 (E.D. Va. 2010) (citing United States v. Middleton, 231 F.3d 1207, 1213 (9th Cir. 2000)).  And the evidence described in the text, as to the asserted costs of the investigation --- these were both "reasonably foreseeable" and "reasonably necessary."  See Animators at L., Inc. v. Cap. Legal Sols., LLC, 786 F. Supp. 2d 1114, 1121 (E.D. Va. 2011) ("an investigation is often required to determine the cause and scope of a computer intrusion").

[Act]") (citing Facebook, Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1065-66 (9th Cir. 2016)), report and recommendation adopted, 2019 WL 2270592 (D. Or. May 28, 2019); cf. hiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 999 (9th Cir. 2019) (holding that LinkedIn's servers are "protected computer[s]" under the Act), judgment vacated on other grounds, 141 S. Ct. 2752 (2021).

No Authorization

As to the next part of the Section 1030(a)(5)(C) analysis, the Court concludes that the Plaintiff is likely to succeed on the merits of his claim that the Defendants "access[ed]" Meta's servers "without authorization."  18 U.S.C. § 1030(a)(5)(C).

Why?  Because the Plaintiff's unopposed-for-now evidence is that the Defendants "launched a coordinated attack," see Complaint ¶ 13 and took control of the Facebook page in question.  See id. ¶¶ 17-18.

That clears the bar.  See, e.g., United States v. Weigand, 2022 WL 5123035, at *11, *14 (E.D. Pa. Oct. 4, 2022) (holding this element satisfied when an individual "accessed . . . emails from [a] Yahoo! email account without . . . permission"), aff'd, 2025 WL 1554931 (3d Cir. June 2, 2025); Delta Pilots Ass'n v. Melvin, 2018 WL 11602002, at *2 (S.D.N.Y. July 10, 2018) (concluding that "a sophisticated hack of [a] website" qualified as "access[ing] a protected computer without authorization") (cleaned up).

Intent

The next part of the Section 1030(a)(5)(C) analysis: is the Plaintiff likely to succeed on the merits of his claim that the Defendants' conduct was "[i]ntentional[]"?

Yes.  Following the initial "attack," see Complaint ¶ 13, the Plaintiff temporarily regained control of the Facebook page several times.  See id. ¶ 15.  But each time, the Defendants regained access just "hours later."  See id. ¶ 16.  After a "Tug-of-War" lasting several days, see id. ¶ 15, the Plaintiff permanently lost control.  See id. ¶ 17.

None of this is contested.  And persistent, purposive behavior is enough to establish intentional action.

This is common sense.  A "pattern of behavior" is generally "sufficient to show intentional" conduct.  Varrallo v. Hammond

6

Inc., 94 F.3d 842, 849 (3d Cir. 1996).  And the Plaintiff has put such a pattern before the Court.

Damage and Loss

The last Section 1030(a)(5)(C) test: is the Plaintiff likely to establish "damage and loss?"  18 U.S.C. § 1030(a)(5)(C).

Yes as to "loss," for reasons already discussed above.

And yes as to "damage."  The Computer Fraud and Abuse Act defines "damage" as "any impairment to the . . . availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  And the undisputed evidence is that the Plaintiff was definitively locked out of the Facebook page "[o]n or about January 24, 2026."  Complaint ¶ 17.  Since at least that date, the "availability" of "a program" has been "impair[ed]."  See, e.g., GPMM, Inc. v. Tharp, 2021 WL 5416139, at *1, *7 (D. Neb. Nov. 19, 2021) (holding that a plaintiff "sustained damage within the meaning of the [Computer Fraud and Abuse Act]" in the time it was locked out of digital account); United States v. Grupe, 2018 WL 775358, at *2 (D. Minn. Feb. 8, 2018) (similar).

*    *    *

Where things stand.

To obtain a preliminary injunction, the Plaintiff must establish, among other things, that he has a likelihood of success on the merits.

To do that as to his federal Computer Fraud and Abuse Act claim, the Plaintiff must show a likelihood of success on each of the four elements needed to make out the claim.

As set out above, he has done that as to elements one, two, and three.

Now consider the fourth element.

Namely, does the evidence suggest that the Plaintiff will be able to establish "conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)"?  Sealord Holdings, Inc., 2012 WL 707075, at *4.

Yes.

Under § 1030(c)(4)(A)(i)(I), what is needed is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  And the Plaintiff has identified more than

7

$5,000 losses that appear to be covered by the statute.  His uncontested evidence is that the investigative cost was $5,000 --- and the necessary paid advertising campaigns will cost $6,300.  See Complaint ¶ 21.

\*    \*    \*

In sum: the Plaintiff has established that he is likely to succeed on the merits of his federal Computer Fraud and Abuse Act claim.

\*    \*    \*

To get a preliminary injunction, the Plaintiff must also clear three more hurdles.

[1]

He must establish that "he is likely to suffer irreparable harm in the absence of preliminary relief."  Winter, 555 U.S. at 20.

The Plaintiff has made that showing.

The undisputed evidence is that the Defendants are "actively stripping the brand's goodwill" by diverting the page's traffic elsewhere.  Complaint ¶ 18.  They post "images that do not appear to be original" at a rate of "approximately once per hour," id. ¶ 18 --- and this is jeopardizing the page's "digital reputation."  See Plaintiff's Brief at 5.

This satisfies the irreparable harm requirement.  See S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) ("Grounds for irreparable injury include loss of control of reputation . . . and loss of goodwill."); Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 726 (3d Cir. 2004) (same); Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998) (same).

[2]

The Plaintiff must also establish that "the balance of equities tips in his favor."  Winter, 555 U.S. at 20.

For now, it is undisputed the Plaintiff created the Facebook page.  See Complaint ¶ 7.  An injunction would protect the page's goodwill and reputation --- and ensure that the Plaintiff can earn money from the content he posts on it.  See id. ¶¶ 18, 21.  The equities are on his side.  The Defendants, who have not appeared, cannot claim an entitlement to proceeding with their

likely-unlawful behavior.  And any difficulty to them of being required to turn over control over the Facebook page is slight ---- and, for now, immaterial.  Per the evidence, the page is not theirs.

[3]

Finally, the Plaintiff must establish "that an injunction is in the public interest."  Winter, 555 U.S. at 20.

It is.  "The public has an interest in ensuring that computers are not accessed without authorization."  See Facebook, Inc. v. Power Ventures, Inc., 252 F. Supp. 3d 765, 785 (N.D. Cal. 2017), aff'd, 749 F. App'x 557 (9th Cir. 2019); accord Meta Platforms, Inc. v. Ates, 2023 WL 4035611, at *9 (N.D. Cal. May 1, 2023), report and recommendation adopted, 2023 WL 4995717 (N.D. Cal. June 27, 2023); Sluchevsky, 2020 WL 5823277, at *9, report and recommendation adopted, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020); Nguyen, 2023 WL 8686924, at *11.  That interest would be vindicated by preventing the Defendants from further interfering with the Plaintiff's Facebook page.

*       *       *

In conclusion: based on his federal Computer Fraud and Abuse Act claim, the Plaintiff is entitled to a preliminary injunction.[9]

A separate order follows.  See Fed. R. Civ. P. 58; Beukema's Petroleum Co. v. Admiral Petroleum Co., 613 F.2d 626, 627 & n.1 (6th Cir. 1979); 11 Wright & Miller's Federal Practice & Procedure § 2785 (3d ed. 2025); cf. MillerCoors LLC v. Anheuser-Busch Cos., LLC, 940 F.3d 922, 922–23 (7th Cir. 2019).

On this 5th day of March, 2026.

Michael E. Farbiarz, U.S.D.J.

---

[9]  Given this ruling, there is no need now to consider whether the Plaintiff would also be entitled to an injunction based on his other claims.  See Complaint ¶¶ 22-29.

9